UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61227-CIV-COHN/SELTZER

JANICE GAU,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.     INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Janice Gau ("Claimant") and by Defendant Michael J. Astrue,

Commissioner of Social Security ("Commissioner"). The motions were referred to the

undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rules 1(c) and (d), Local Rules

of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether substantial evidence exists

to support the determination by the Administrative Law Judge ("ALJ") that Claimant retains

the capacity to perform her past relevant work and, therefore, is "not disabled" within the

meaning of the Social Security Act. The undersigned concludes that substantial evidence

does support the ALJ's determination. Accordingly, the undersigned RECOMMENDS that

_____

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1 (5th Cir. 1981).

Plaintiff's Motion for Summary Judgment (DE 23) be DENIED, that Defendant's Motion for Summary Judgment (DE 30) be GRANTED, and that the Commissioner's decision be AFFIRMED.

II.    PROCEDURAL HISTORY

On March 22, 2004, Claimant protectively filed an application for a period of Disability Insurance Benefits ("DIB").[2]  Tr. 29, 85-86.  In this application, Claimant alleged a (revised) disability onset date of August 26, 2003, and alleged that she suffers from restless leg syndrome[3] and a resulting sleep disorder.  Id.  The Social Security Administration denied Claimant's applications initially and upon reconsideration.  Tr. 10-15, 27-38.

Claimant filed a timely request for a hearing, which was held before an ALJ on May 4, 2006.  Tr. 41-54.  On June 9, 2006, the ALJ issued her decision, finding that Claimant

---

[2] Claimant's March 22, 2004 application represents her second attempt to obtain benefits. Tr. 29. Initially, on October 31, 2001, Claimant applied for DIB and Supplemental Security Income ("SSI"), alleging a September 7, 2001 disability onset due to severe restless leg syndrome.  The application was denied on January 19, 2002, because Claimant was engaging in substantial gainful activity.  Id.

[3] Restless leg syndrome is defined as:

a sleep disorder characterized by leg discomfort during sleep, which is only relieved by frequent movements of the legs. . . .  The disorder consists of sensations in the lower legs that make the person uncomfortable unless the legs are moved. . . .  The abnormal sensations occur in the upper leg, the feet or the arms in addition to the lower leg. . . .  There is an irresistible urge to walk or move the legs to relieve the discomfort, resulting in periodic episodes of leg movements during early sleep stages.  The symptoms may last for 1 hour or longer.

University of Maryland Medical Center, Restless Leg Syndrome, http://www.umm.edu/ency/article/000807.htm (last visited June 21, 2008).

was "not disabled" because she can perform her past relevant work.  Tr. 27-38.  On December 19, 2006, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner.  Tr. 10-12.

On August 28, 2007, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision.  DE 1.  On January 28, 2008, the Commissioner filed an Answer, together with the administrative record.  DE 11-12.  On May 14, 2008, Claimant filed her Motion for Summary Judgment.  DE 23.  And on June 18, 2008, Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 30).  Thereafter, Claimant neither responded to the Government's motion nor replied to its response, and her time for doing so has now passed.

Accordingly, the matter is now ripe for decision.

III.   FACTS

The undersigned has reviewed the Statement of Facts contained within Commissioner's Motion for Summary Judgment and finds that it fairly and accurately summarizes the relevant portions of the administrative record.[4]

> Plaintiff protectively filed her application for Disability Insurance Benefits under Title II on March 22, 2004 (Tr. 85-92).  She was born in 1963, and alleged that she became disabled beginning August 26, 2003, due to restless leg syndrome, a sleep disorder, acid reflux and fibromyalgia (Tr. 85, 90, 154, 1168, 86).  She had past relevant work as a secretary, administrative assistan[t], administrative supervisor, receptionist and data entry clerk (Tr. 107, 127-33, 155, 178-85).

* * * *

---

[4] The undersigned has bracketed minor corrections to the Statement of Facts.

3

On October 21, 2003, Plaintiff was examined by Michael H. Silber, M.D., at the Mayo Sleep Disorders Center (Tr. 278-85). Plaintiff reported that her restless leg syndrome started 21 years prior to the visit when she was pregnant (Tr. 279). She had been in remission until seven years prior to the visit when it restarted after she was weaned from six weeks of morphine usage following resection of her coccyx (Tr. 279). She reported that walking helped to relieve her symptoms (Tr. 279). Plaintiff stated that previous medications either were ineffective or resulted in intolerable side effects (Tr. 279). She stated that after discontinuing Sinemet, her symptoms did not start until 5:00 p.m. (Tr. 279). She reported that Mirapex worked, but caused nausea and excessive daytime sleepiness especially at higher doses (Tr. 279). Plaintiff also stated that her restless leg syndrome had spread into the morning starting around 10:00 a.m. (Tr. 280). Dr. Silber noted that management would be difficult, but recommended medication changes (Tr. 280).

On December 2, 2003, Plaintiff saw Carol B. Miles, M.D., for a follow-up appointment regarding her restless leg syndrome and sleep disorder (Tr. 307-08). Dr. Miles noted that Dr. Silber recommended exercise and a change in medication (Tr. 308). Plaintiff reported that she felt too fatigued to exercise (Tr. 308). Plaintiff stated that she received private disability and if she developed some lethargy it would not be critical (Tr. 308). Plaintiff's medications were continued and Neurontin was added (Tr. 307). Plaintiff missed a scheduled appointment with Dr. Miles on April 5, 2004 (Tr. 307).

On April 16, 2004, Plaintiff was hospitalized at Avera McKennan Hospital reporting a three-week history of increasing weakness, pain and numbness involving the left side of her body (Tr. 286-304). In addition, restless leg syndrome was noted with associated chronic fatigue (Tr. 287). Plaintiff did not appear to be in any distress (Tr. 289). An MRI of the brain was normal (Tr. 297-98, 304). A neurological evaluation ruled out an acute neurological problem and further outpatient evaluation was advised (Tr. 287). She was discharged on the next day (Tr. 287).

On May 4, 2004, Dr. Miles saw Plaintiff in follow-up to her hospital admission (Tr. 306). Plaintiff described achiness in her joints and muscles (Tr. 306). She was able to walk, squat and stand without difficulty (Tr. 306). On neurologic examination, Dr. Miles found nothing abnormal and her MRI

and CT scan of the head were "fine" (Tr. 306).  Dr. Miles felt her symptoms could be related to fibromyalgia and she was referred for a rheumatology evaluation (Tr. 306).

On June 30, 2004, Plaintiff was evaluated by Niveditha Mohan, M.D., at a rheumatology clinic (Tr. 321-22).   Plaintiff complained of diffuse aches and pains, chronic fatigue, nonrestorative sleep, occasional chest pain and problems with concentration and memory (Tr. 322).  On examination, Plaintiff had 8 of 11 tender points that were positive for fibromyalgia (Tr. 322).   She also had tenderness to palpation in her forearms bilaterally (Tr. 322).  Dr. Mohan stated that although Plaintiff did not strictly meet the criteria for fibromyalgia syndrome, she had enough symptomology to qualify for a diagnosis (Tr. 321).  Flexeril was recommended followed by Effexor and if she did not tolerate the medications, [Wellbutrin] was recommended (Tr. 321).  Plaintiff later called stating that she had no relief with Effexor and wanted to try [Wellbutrin] (Tr. 320).  On August 3, 2004, Naprosyn was prescribed for complaints of increased aching (Tr. 319).  In connection with a rheumatology follow-up on September 22, 2004, Plaintiff stated that she felt worse than before (Tr. 399).  She continued to report diffuse muscle pain, night sweats and poor sleep (Tr. 399).  She complained of significant fatigue during the day (Tr. 399).  After reviewing Plaintiff's chart, Dr. Mohan stated "it appears that she did not give any of her medications a good enough trial.  She took Flexeril for two days.  She took Effexor for three to four days, and she tried Wellbutrin again for only a very short while.  She also reported that Naprosyn has been causing more fatigue during the day." (Tr. 399).  Dr. Mohan recommended that Plaintiff take Flexeril and Wellbutrin again (Tr. 399).  She was also encouraged to exercise (Tr. 399).

On March 17, 2005, Plaintiff telephoned a request for refills on her prescriptions stating that she was moving to New Orleans (Tr. 398).  Dr. Mohan refilled her prescriptions and provided a list of rheumatologists in New Orleans (Tr. 398).  Plaintiff telephoned again on April 13, 2005, requesting a month's supply of medication because she could not fin[d] her prescriptions (Tr. 397).   She was staying at a motel and believed that her prescriptions were packed away in the front of the U-Haul and she could not find them (Tr. 397).  Dr. Mohan declined Plaintiff's request (Tr. 397).

Stephen M. Layne, M.D., saw Plaintiff for an[] evaluation of her

5

restless leg syndrome on July 13, 2005 (Tr. 413-15). Dr. Layne increased Plaintiff's dosage of Mirapex (Tr. 414).

Plaintiff was evaluated by a neurologist, Barry J. Cutler, M.D., on February 6, 2006, after moving to Florida (Tr. 420-21). Plaintiff was constantly moving her legs and rubbing her thighs during the examination (Tr. 421). Dr. Cutler's impression was fibromyalgia and restless leg syndrome (Tr. 421). Mirapex was replaced with ReQuip (Tr. 422). Two weeks later, Plaintiff's medication dosage was "not nearly up to the levels" that would be necessary and she had not experienced any improvement (Tr. 418). Plaintiff continued to report that she felt exhausted, anxious and depressed (Tr. 418). She also had numbness of the left hand possibly related to carpal tunnel syndrome for which a wrist splint was advised (Tr. 419).

Plaintiff testified at an administrative hearing held on May 4, 2006 (Tr. 39-54). Plaintiff stated that she went on disability at her last job on August 26, 2003 (Tr. 43-44). Restless leg syndrome caused her legs to constantly move (Tr. 44). She had side effects to medication causing her to be sick and tired (Tr. 45-46). Plaintiff testified that her husband performed the household responsibilities (Tr. 48). She drove very short distances because it was difficult to sit in a car (Tr. 48). She did "a little" cleaning, shopping and cooking (Tr. 48-49). Plaintiff stated that she did not read because she could not concentrate (Tr. 49).

Plaintiff submitted new evidence to the Appeals Council following the ALJ's decision (Tr. 18-24). Dr. Cutler examined Plaintiff on April 24, 2006, for complaints of worsening restless leg syndrome and little sleep (Tr. 23-24). In a medical assessment dated November 20, 2006, Dr. Cutler opined that Plaintiff could sit less than one hour and stand and walk one hour in an eight-hour workday (Tr. 19). She could frequently lift 10 pounds and occasionally lift up to 100 pounds (Tr. 19). She could frequently climb, kneel, crouch, stoop, balance and crawl (Tr. 19). She had no environmental restrictions (Tr. 20). Dr. Cutler also opined that Plaintiff's ability to sustain attention for periods greater than two hour segments and her ability to complete an eight-hour workday were impaired (Tr. 21). Dr. Cutler wrote, "[Patient's] restless legs are so bad that it interferes with her ability to function normally" (Tr. 22).

Defendant's Motion at 2-6 (DE 30).

IV.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one.  Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  Id.; Richardson v. Perales, 402 U.S. 389 (1971).  "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion.  Id. at 401; Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  Bloodsworth, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.   ANALYSIS

A.   The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  In determining the merits of a claim for benefits, the court must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history.  Walden, 672 F.2d at 839.

7

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If a severe impairment is not found, the ALJ will conclude that there is no disability; if a severe impairment is determined, the ALJ will proceed to the next phase of the analysis.  Id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).  This determination takes into account  "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others.  Id.  The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(e).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. § 404.1520(f).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569. The Guidelines are composed of detailed grids and rules which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. § 404.1569. The Guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the

claimant suffers from non-exertional limitations, such as mental impairments.  <u>Hargis</u>, 945

F.2d at 1490; <u>Walker</u>, 826 F.2d at 1003.  When the Guidelines may not be conclusively

applied, they may serve only as a framework to determine whether sufficient jobs exist

within the claimant's range of residual functional capacity.  <u>Hargis</u>, 945 F.2d at 1490.  In

such instances, the Commissioner must instead carry his burden through the use of a

vocational expert.  <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989); <u>Wingo v. Bowen</u>, 852

F.2d 827, 831 n. 4 (5th Cir. 1988); <u>Walker</u>, 826 F.2d at 1003.  A vocational expert provides

the ALJ with a realistic appraisal of the work a claimant is capable of performing.  <u>Bowen</u>,

889 F.2d at 50.

   B.   <u>Application of the Sequential Evaluation by the ALJ</u>

   After considering all of the evidence, the ALJ concluded that Claimant is able to

return to her former employment and, therefore, is "not disabled" for purposes of the Social

Security Act.  Tr. 35.

   In arriving at this conclusion, the ALJ addressed each step in the evaluative

sequence.[5]  She first observed that Claimant has not engaged in substantial gainful activity

at any time relevant to the decision.  Tr. 31.  The ALJ next found that Claimant has the

following "severe" impairments:  "fibromyalgia, restless leg syndrome [and] chronic fatigue

syndrome."  Tr. 31.  Yet, the ALJ also found that Claimant's impairments fail to meet or

equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations

No. 4.  Tr. 35.

   The ALJ proceeded to assess Claimant's residual functional capacity.  As part of

_____

   [5] Preliminarily, the ALJ found that Claimant meets the insured status requirements
of the Social Security Act through December 31, 2009.  Tr. 31.

this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. However, the ALJ discounted Claimant's subjective complaints, finding "discrepancies between the [C]laimant's testimony and the medical evidence of record." Tr. 37. Then, after considering the entire record, including medical evidence, the ALJ found that Claimant retains the functional capacity for light work.[6] According to the ALJ:

> [C]laimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally and push/pull like amounts of weight; sit, stand, walk up to six hours in a workday with normal breaks; never climb ropes, ladders or scaffolds; and frequently stoop, balance, climb stairs and ramps; kneel, crouch, and crawl.

Tr. 35.

Having found that Claimant is capable of light exertional activity, the ALJ next considered whether she retains the ability to perform her "past relevant work." Tr. 38. The ALJ noted that Claimant's past jobs as a secretary, administrative assistant, administrative supervisor, receptionist, and data entry clerk did not require work related activities that are precluded by her residual functional capacity. Id. Accordingly, she found that Claimant "demonstrated the ability to perform these jobs in spite of her restless leg syndrome." Id.

_____

[6] The Code of Federal Regulations defines "light work" as:

> [work involving the] lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

And because she can perform her past work, the ALJ concluded that Claimant is not under a "disability" as defined in the Social Security Act and, therefore, is not entitled to Disability Insurance Benefits.  Id.

 C. Discussion

 Claimant disputes the findings and conclusions of the ALJ.  Claimant argues that the ALJ erred in assessing:  1) her impairments; 2) her credibility; 3) her residual functional capacity; and 4) her ability to perform past relevant work.  Furthermore, Claimant argues that the Appeals Council erred in its assessing her newly submitted evidence.  Claimant's Motion at 8-9 (DE 23).  The undersigned, however, does not find Claimant's arguments persuasive and addresses each one as part of the discussion below.

 1. The ALJ Properly Considered Claimant's Combination of Impairments

 Claimant argues that the ALJ failed to evaluate the combined effects of her limitations.  See Claimant's Motion at 9-10 (DE 23).  It is well established that the ALJ must consider the combined effects of a claimant's impairments.  See Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) ("Where a claimant [alleges] several impairments, the [Commissioner] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled.").  The combination of impairments must be considered even when the separate impairments are not severe.  See Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985).

 The ALJ's decision reveals that she did consider Claimant's impairments in combination with one another.  Indeed, the ALJ expressly found that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals one of those listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."  Tr. 35

(emphasis added); see Douglas ex rel. Patterson v. Comm'r of Soc. Sec., Case No. 04-16235, 2005 WL 3116634, *1 (11th Cir. Nov. 23, 2005) (ALJ's statement that "claimant's combination of impairments does not meet or medically equal the criteria set forth for any impairment in the listings" clearly showed that the ALJ considered claimant's impairments in combination).  Further, the ALJ specifically discussed each of Claimant's impairments, including her fibromyalgia, restless leg syndrome, sleep disorder, acid reflux syndrome, and chronic fatigue.  And although Claimant objects that the ALJ did not identify the specific listed impairments that she considered, Claimant has not identified any specific listing that she suggests she met or equalled.

> 2.    The ALJ Properly Assessed the Credibility of Claimant's Subjective Complaints

Claimant argues that the ALJ erred in discounting her subjective complaints and in not subsequently conducting the "two-pronged analysis in her decision." Claimant's Motion at 15-16 (DE 23).  The undersigned does not agree.

The ALJ's assessment of subjective complaints is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).  The Eleventh Circuit has stated that an individual alleging disabling pain must show not only evidence of an underlying medical condition, but also

either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)).  "The standard also applies to complaints of subjective conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  When this standard is met, the ALJ must then consider a claimant's subjective complaints. Foote v. Chater, 67 F.3d 1553, 1560-61 (11th Cir. 1995).  The ALJ, however, is not required to credit those complaints.  Id.  She may discount them provided she "articulate[s] explicit and adequate reasons for doing so." Id. at 1561-62.[7]  The ultimate issue is not whether Claimant has some pain and limitations, but whether Claimant is credible to the extent that her pain and limitations prevent her from performing any kind of work. See Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996).

The ALJ grounded her adverse credibility determination on several considerations.  First, the ALJ considered that Claimant had actually continued to work following her initial application for benefits.  Tr. 36-37.  Although Claimant had alleged in that initial application that she became disabled as of September 7, 2001, she continued to work for almost two years thereafter.  This demonstrated ability to work conclusively rebutted her previous

---

[7]  The undersigned notes that Claimant alleges that the ALJ failed to consider the "two-pronged analysis in her decision, when assessing [Claimant's] credibility." Claimant's Motion at 15-16 (DE 23).  The ALJ, however, stated that she utilized the factors discussed in S.S.R. 96-7p (Cum. Ed. 1996) and 20 C.F.R. § 404.1529(c), which the Eleventh Circuit has approved; the regulation contains the language that the Circuit interpreted when it established its three-part pain standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2000).

contention and undermined her credibility.  Furthermore, the ALJ found that there had been

no significant change or worsening of Claimant's symptoms as of August 2003, when she

again stopped working.  Tr. 37.

Second, the ALJ considered that Claimant had applied for and was receiving private

disability benefits.  The ALJ believed that these benefits gave Claimant "little incentive for

her to return to work."[8]  Tr. 36.  Although not dispositive, an ALJ may properly consider a

claimant's financial motivation in making her decision.  Cf. Ramirez v. Barnhart, 292 F.3d

576, 581-82 & n.4 (8th Cir. 2002) (holding that the use of financial motivation is not

dispositive because there exists such motivations with every applicant for benefits).

Third, the ALJ considered the significant time gaps in Claimant's medical treatment.

Tr. 37.  Specifically, the ALJ noted:

> There is a gap in treatment records from September 2004
> (Exhibit 15F) until March 2005 (Exhibit 16F, pg. 3), then a gap
> until July 2005 (Exhibit 17F) and the [C]laimant did not seek
> medical treatment after her move to Florida until February
> 2006 (Exhibit 18F).

Id.   The failure to seek consistent treatment undermined Claimant's allegations of

disability.  Tr. 37; see McCloud v. Barnhart, 166 F. App'x 410, 417-18 (11th Cir. 2006)

(stating that based on the "[Claimant's] non-compliance and lack of treatment, the ALJ

properly concluded that the medical evidence refuted [Claimant's] complaints. . . .").

Fourth, the ALJ noted Claimant's use of multiple medications and her failure to allow

the medications an adequate time to work.  Tr. 37; see 20 C.F.R. § 404.1530 (indicating

---

[8] The undersigned notes that Claimant rejected Dr. Miles' December 2003 advice to exercise, explaining to Dr. Miles that it would not be critical if she became lethargic because she received private disability benefits.  Tr. 308.

that failure to follow prescribed treatment can result in the denial of disability benefits).
More specifically, the ALJ noted the comment by the rheumotologist, Dr. Mohan, who
stated "that [C]laimant did not give any medications for fibromyalgia an adequate trial. .
.This also seems to be a pattern with regard to her restless leg syndrome in that
[C]laimant's changes in medications are based on her reported side effects and she herself
has requested medication changes on numerous occasions."  Tr. 37, 399.

Fifth, in assessing credibility, the ALJ noted several inconsistencies in Claimant's
statements:

> [Claimant stated at the hearing] that her medications made her
> very tired and she had to lie down every day.  However in
> Exhibit 17F, pg. 1 she reported she "rarely" took a nap and that
> she was only drowsy enough by 9:30PM to fall asleep.
> Further, Exhibits 18F, pg. 2 indicates she liked to be standing
> or walking most of the time.

> * * * *

> Entries in the record also show that since her alleged onset,
> the [C]laimant initially moved from South Dakota to Louisiana
> and then from Louisiana to Florida.  An entry in the medical
> record indicates the move from South Dakota to Louisiana was
> done by using a U-Haul thus suggesting the claimant drove or
> rode in connection with that move which is directly contrary to
> her statements and testimony that she is unable to sit for
> extended periods of time.

Tr. 37.

Although the ALJ did believe that Claimant has some limitations, the ALJ had a
substantial basis upon which to discount Claimant's subjective complaints to the extent
alleged.  And "[a] clearly articulated credibility finding with substantial supporting evidence
in the record will not be disturbed by a reviewing court."  Foote, 67 F.3d at 1562 (citing
MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

3.      The ALJ Properly Assessed Claimant's Residual Functional
        Capacity

In assessing Claimant's residual functional capacity, the ALJ considered all the evidence, including Claimant's statements and the medical evidence.  Tr. 31-38.  After discounting Claimant's subjective complaints, the ALJ found that Claimant is able to perform "light work."  Tr. 38.  Claimant, however, argues that the ALJ did not properly consider her nonexertional impairments when assessing her residual functional capacity. See Claimant's Motion at 16 (DE 23).  The undersigned does not agree.

First, the ALJ noted that Claimant complained of lightheadedness and dizziness in 2001, but was given breathing techniques and returned to work thereafter.  Tr. 32.  Indeed, in 2006, Dr. Cutler noted no vertigo.  Tr. 421.

Second, Claimant complained that she needed to relieve the symptoms of her restless leg syndrome by getting up and walking around.  Tr. 35.  Claimant, however, made it clear at the hearing that there was no pain associated with these symptoms.  Tr. 35.

Third, Claimant alleged that her medications made her so tired that she could not work.  Tr. 37, 45.  But, as the ALJ noted, Claimant had also stated that she "rarely" took naps and "was only drowsy enough to fall asleep at 9:30 p.m."  Tr. 37.

Fourth, Claimant alleges that the symptoms of the restless leg syndrome hindered her ability to concentrate.  However, the Appeals Council had for its consideration Dr. Cutler's records, which do not note any inability to concentrate. Tr. 420-22.

Finally, Claimant argues that her fibromyalgia significantly limits her ability to do basic work  activities.  Claimant's Motion at 14 (DE 23).  Yet, fibromyalgia is not a per se disabling impairment that would limit a claimant's ability to do basic work activities.  See

e.g., Hanna v. Chater, 930 F. Supp. 378 (N.D. Iowa 1996) (claimant who alleged she had fibromyalgia, shoulder impingement, right carpal tunnel syndrome, left wrist tendinitis, and back problems was not disabled); Bourassa v. Shalala, 844 F. Supp. 853, 856 (D. Mass. 1994) (claimant with fibrositis, obesity, post traumatic stress disorder, and post bilateral carpal tunnel release surgery was not disabled).  Although fibromyalgia causes joint pain and fatigue, the issue before the ALJ was the severity of Claimant's fibromyalgia-related symptoms.  See Tennant v. Apfel, 224 F.3d 869, 870 (8th Cir. 2000).  Based on the symptoms presented to the ALJ, she determined that Claimant's fibromyalgia was not sufficiently limiting to warrant awarding benefits.  Tr. 33.  Accordingly, the ALJ properly considered the nonexertional impairments in assessing her residual functional capacity.

4.     The ALJ Properly Considered Claimant's Ability to Perform Past Work

Claimant next argues that the ALJ erred in concluding that she could return to her past work.  Again, the undersigned does not agree.

Claimant stated that her past jobs — secretary, administrative assistant, administrative supervisor, receptionist, and data entry clerk — required that she sit for six to eight hours, walk for one hour, stand for one hour, and lift less than ten pounds.  Tr. 178-85.  After comparing the physical and mental demands of this work to Claimant's capacity for light work, the ALJ properly found that these jobs do not require the performance of activities precluded by her residual functional capacity.  Tr. 38; see 20 C.F.R. § 404.1565.

5.     The Appeals Council Properly Considered the Newly Submitted Evidence

Claimant alleges that her case should be remanded because she presented new evidence to the Appeals Council that the ALJ did not have an opportunity to consider —

the records and opinion of Dr. Cutler.  See Claimant's Motion at 16-17.

The Appeals Council did consider Dr. Cutler's records when it reviewed the ALJ's decision.  Tr. 13, 16-24.  These records show that Dr. Cutler examined Claimant on April 24, 2006, with respect to her restless leg syndrome and resulting sleep deprivation.  Tr. 23-24.  On November 20, 2006, he again examined Claimant and opined that she was unable to sit for more than one hour and/or stand and walk for more than one hour in an eight hour workday.  Tr. 19.  He opined that she could frequently lift 10 pounds and could occasionally lift up to 100 pounds and that she was able to "frequently climb, kneel, crouch, stoop, balance and crawl."  Tr. 19.  Additionally, Dr. Cutler opined that Claimant's ability to maintain concentration for periods of more than two hours was impaired.[9]  Tr. 21.  After considering these records, the Appeals Council found that they did not provide a basis for changing the ALJ's decision.  Tr. 13-15.  Significantly, Dr. Cutler's November 2006 opinion that Claimant could not perform even sedentary work was rendered five (5) months after the close of the relevant time frame for analysis.  See 20 C.F.R. § 404.620(a) (a claimant's application is effective only through the date of the ALJ's decision).  The Appeals Council, therefore, acted properly in concluding that the ALJ's decision was supported by the record as a whole, even when the new evidence was included.  And because substantial evidence in the record as a whole still supported the ALJ's decision, remand is not warranted.

## VI.   RECOMMENDATION

Claimant had a fair hearing and full administrative consideration in accordance with the applicable statutes and regulations.  The ALJ's finding that Claimant can return to her

---

[9] Significantly, Dr. Cutler's own treatment notes do not mention that Claimant had attention problems.  Tr. 416-22.

past work is supported by substantial evidence in the administrative record.  The ALJ, therefore, correctly concluded that  Claimant is not entitled to Disability Insurance Benefits. Accordingly, the undesigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 23) be DENIED, that Defendant's Motion for Summary Judgment (DE 30) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking, on appeal, factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 1st day of August 2008.


BARRY S. SELTZER
United States Magistrate Judge


Copies furnished to:

Honorable James I. Cohn
United States District Judge

All Counsel of Record

20